## ATTACHMENT A:
## STIPULATED FACTS – UNITED STATES v. BORIS RUBIZHEVSKY

*If this matter had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

Between in or about October 2011 and continuing through in or about February 2013, **BORIS RUBIZHEVSKY ("RUBIZHEVSKY")** did willfully, and knowingly combine, conspire, confederate and agree with Foreign Official One, Executive A and others to conduct and attempt to conduct financial transactions which they knew to involve the proceeds of some form of unlawful activity, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said distribution, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

**RUBIZHEVSKY** was a citizen of the United States and resident of New Jersey, and was the owner and sole employee of NexGen Security Corporation ("NexGen"), based in New Jersey.

JSC Techsnabexport ("TENEX") supplied uranium and uranium enrichment services to nuclear power companies throughout the world on behalf of the Russian Federation. TENEX was indirectly owned and controlled by, and performed functions of, the government of the Russian Federation.

TENEX established a wholly-owned subsidiary company located in the United States in or about October 2010, TENAM Corporation ("TENAM"). TENAM, which was incorporated in Maryland, was TENEX's official representative office in the United States. TENAM was indirectly owned and controlled by, and performed functions of, the government of the Russian Federation.

Foreign Official One, a national of the Russian Federation, was a Director of TENEX from at least 2004 through in or about October 2010, and was the President of TENAM from in or about October 2010 through in or about October 2014. From in or about December 2011 through in or about October 2014, Foreign Official One was a resident of Maryland.

Cylinder Corporation A was a company, based in Ohio, which engaged in the manufacture of tanks and vessels for the oil and gas, nuclear, and marine markets. Cylinder Corporation A secured contracts with TENEX to supply storage and transportation cylinders. In or about September 2012, Cylinder Corporation A was acquired by another company headquartered in Ohio.

Executive A was an officer of Cylinder Corporation A.

Between at least in or about October 2011 and in or about February 2013, Foreign Official One, Executive A, and others entered into a conspiracy and devised and executed a scheme and artifice to defraud TENEX of money and property and of the intangible right to

Foreign Official One's honest services through a scheme for Foreign Official One to obtain payments from Cylinder Corporation A, which made those payments for the purpose of attempting to secure a competitive and unfair advantage in acquiring business with TENEX ("the scheme to defraud").

In order to conceal the scheme to defraud, Foreign Official One and Executive A engaged intermediaries, including **RUBIZHEVSKY**, to transfer payments from Cylinder Corporation A into foreign bank accounts for the benefit of Foreign Official One. **RUBIZHEVSKY** conducted the financial transactions knowing the transactions involved the proceeds of the scheme to defraud and knowing that the purpose of his involvement in the transactions was to conceal the nature, source, ownership and control of the proceeds.

It was part of the scheme to defraud that Foreign Official One provided Cylinder Corporation A, which was attempting to secure contracts with TENEX and which made payments for the purpose of attempting to secure an unfair advantage, with assistance in obtaining contracts with TENEX. In furtherance of the scheme to defraud, Foreign Official One sent electronic mail ("email") to **RUBIZHEVSKY,** including an email dated November 18, 2011, instructing **RUBIZHEVSKY** to verify that Executive A received an instruction for Cylinder Corporation A to submit "fake" tender documents to TENEX. Foreign Official One informed **RUBIZHEVSKY** in the email that "[t]his is for secure measures if someone will search the formalities." In addition to communicating through email, Foreign Official One and **RUBIZHEVSKY** met with each other in person in Maryland to discuss aspects of the scheme to defraud.

In furtherance of the money laundering conspiracy, **RUBIZHEVSKY** and his co-conspirators, among other things, knowingly created sham contracts, communicated via email, and caused wire payments to be made. For example, **RUBIZHEVSKY** entered into sham consulting agreements with both Cylinder Corporation A and a corporation in the United Kingdom. **RUBIZHEVSKY** did not provide the consulting services described in the agreements. Instead, as described in the following paragraph, **RUBIZHEVSKY** merely received payments from Cylinder Corporation A and made payments as directed by, and for the benefit of, Foreign Official One.

In or about July 2012, **RUBIZHEVSKY** received a $16,500 payment from Cylinder Corporation A. Shortly thereafter, **RUBIZHEVSKY** provided Foreign Official One with access to money from a bank account in Switzerland, and Foreign Official One later provided **RUBIZHEVSKY** with a portion of that money. Subsequently, in or about November 2012, **RUBIZHEVSKY** received a $91,500 payment from Cylinder Corporation A's bank account, and shortly thereafter, **RUBIZHEVSKY** wired $60,000 from the NexGen bank account into a Latvian bank account, at the direction of Foreign Official One and for the benefit of Foreign Official One.

As set forth above, **RUBIZHEVSKY** knowingly participated with Foreign Official One, Executive A, and others in financial transactions involving the proceeds of wire fraud and wire fraud conspiracy that were designed to conceal the nature, location, source, ownership and

control of those proceeds. **RUBIZHEVSKY**'s agreement and involvement in the money laundering conspiracy resulted in at least $70,000, but less than $120,000, of laundered funds.

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_6/15/15_
Date

_B. Rubizhevsky_
Boris Rubizhevsky

I am Boris Rubizhevsky's attorney. I have carefully reviewed the statement of facts with him.

_6/15/15_
Date

_Eugene Gorokhov, Esq._

11